**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| **ERIC ANTHONY ARRIAGA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. V-08-76** |
| | § | |
| **J.A. RENDON,** *Individually* **&** | § | |
| **R. GREGORY,** *Individually*, | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Ryan Gregory's ("Gregory") Motion for Summary Judgment on the Basis of Qualified Immunity (Dkt. No. 61), to which Plaintiff Eric Anthony Arriaga ("Arriaga") has responded (Dkt. Nos. 69, 83 & 95), and Gregory has replied (Dkt. Nos. 70 & 97).[1] After considering the motion, responses, replies, record, and applicable law, the Court is of the opinion that Gregory's motion should be GRANTED.

**I.  Factual Background**

This lawsuit arises from an incident that occurred on June 22, 2007 at the Cactus Canyon nightclub in Victoria, Texas. On the night in question, Defendant Gregory, a licensed officer employed by the Texas Alcohol & Beverage Commission (TABC), was on duty at the Cactus Canyon. Arriaga was having drinks with his brother at the same club when he became involved in a verbal altercation with another patron, Fabian Garcia ("Garcia"), who was there with Arriaga's ex-girlfriend, Crystal Garza ("Garza"). Arriaga and Garza had broken up only two days earlier. Vincent Carter ("Carter"), a nearby patron who witnessed the altercation, feared that

---

1.  Both Parties also filed motions to supplement their respective motions and responses. Defendant Gregory's Motion to Supplement Motion for Summary Judgment (Dkt. No. 88) and Plaintiff's Motion to file Plaintiff's Second Supplemental Response to Defendant Gregory's Motion for Summary Judgment (Dkt. No. 95) are hereby GRANTED.

it might escalate to physical violence and reported this to Gregory. After receiving Carter's report, Gregory, fellow TABC officer J.A. Rendon ("Rendon"), and Victoria County Sheriff's Deputies T. Marshall ("Marshall") and J.T. Smith ("Smith") approached Arriaga and Garcia and directed them to leave the bar.

What happened next is heavily contested. According to the facts as alleged in Arriaga's Fourth Amended Complaint (Dkt. No. 58), Arriaga initially questioned the officers as to why he was being forced to leave the club, but they continued to order him to go outside with no explanation. Arriaga maintains that he was not looking for any trouble and continued to walk towards the front exit of the club. As Arriaga made his way towards the exit, he again asked Gregory and Rendon why he was being asked to step outside. Then, with no warning or provocation, Rendon struck Arriaga across the lower leg and ankle with his asp,[2] sending him to the ground. Arriaga states that once he was on the ground, he lay defenseless while Gregory and Rendon beat him with their asps as Marshall and Smith stood idly by and watched. Arriaga was then arrested and charged with "public intoxication" and "resisting arrest." He pled guilty to public intoxication, but the resisting arrest charge was later dropped. Arriaga claims that as a result of the beating he took before his arrest that night, he sustained numerous physical injuries, including a broken fibula that required reconstructive surgery.

## II. Procedural Background

Arriaga filed suit against Officers Gregory, Rendon, Marshall, and Smith; Victoria County, Texas; the TABC, and Alan Steen, as Administrative Head of the TABC. Only Gregory and Rendon, in their individual capacities, remain as defendants in this case. Arriaga's complaint alleges three Fourth Amendment violations against Gregory: (1) unlawful seizure; (2) unlawful

---

2. An "asp" is an expanding tactical metal baton manufactured by Armament Systems and Procedures (ASP). *See* http://www.asp-net.com.

arrest; and (3) excessive use of force. Gregory now moves for summary judgment on all claims. Gregory argues that no constitutional deprivation occurred, and, alternatively, that even if the Court finds a constitutional deprivation did occur, Gregory acted as a reasonable officer under the circumstances and is therefore entitled to qualified immunity. Thus, Gregory claims, the Court should grant summary judgment as a matter of law.

## III. Legal Standard

### A.  Summary Judgment Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718—19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323—25 (1986). To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998); *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995). "The court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record

is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). However, the non-movant cannot avoid summary judgment by presenting only "conclusory allegations" or "unsubstantiated assertions," such as the bare allegations of a complaint, but must present sufficient evidence, such as sworn testimony in a deposition or affidavit, to create a genuine issue of material fact as to the claim asserted. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). "Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'" *Freeman v. U.S.*, 2005 WL 3132185, *2 (S.D. Tex. Nov. 22, 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

### B. Qualified Immunity Standard

Qualified immunity shields officials from individual liability under 42 U.S.C. Section 1983 unless the official's conduct violates "clearly established constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1981); *see also Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (quoting *Cantu v. Rocha*, 77 F.3d 795, 802 (5th Cir. 1996)). The doctrine of qualified immunity reconciles the need to compensate individuals whose rights have been violated with the concern that personal liability will inhibit public officials in the discharge of their duties. *See Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994).

The qualified immunity analysis requires a two-step inquiry. *See Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992). First, the Court must determine whether the plaintiff has alleged facts indicating the violation of a constitutional right clearly established at the time of the

violation. *Id.* at 305. A right is "clearly established" when its contours are clear enough for a reasonable official to understand that what he is doing violates that right. *Id.* at 310 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). If the plaintiff satisfies this standard, the Court must evaluate whether the defendant's conduct was objectively reasonable. *See Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. 1993); *Salas*, 980 F.2d at 305—06.

## IV.   Discussion

Before considering the substantive merits of Gregory's motion, the Court first notes that both Parties have objected to portions of the opposing side's summary judgment evidence. (Dkt. Nos. 69, 81 & 92.) The Court has considered both the evidence proffered and the Parties' objections, and to the extent the Court has regarded portions of the evidence as admissible and necessary to the resolution of particular summary judgment issues, it hereby overrules the evidentiary objections. To the extent the Court has not relied on other evidence about which a party complains, the remaining objections are denied as moot.

### A.   Unlawful Seizure

Arriaga claims that his seizure prior to arrest—in which he was forced to escort Gregory and Rendon outside the Cactus Canyon nightclub—was unlawful because he was "detained without reasonable suspicion and/or probable cause," where he was not a "suspect" and had "committed no crime." (Pl.'s Fourth Am. Compl., Dkt. No. 58, ¶¶ 21 & 24.)

"Whenever an officer restrains the freedom of a person to walk away, he has seized that person," *Tennessee v. Garner*, 471 U.S. 1, 7 (1985), and it is undisputed that during the relevant period, the right to be free from seizure without reasonable suspicion was clearly established. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000). While police officers may stop and briefly detain an individual for investigative purposes if they have reasonable suspicion

that criminal activity is afoot, an officer must be able to articulate something more than an "inchoate and unparticularized hunch." *Id.* (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Instead, the Fourth Amendment requires some minimal level of objective justification. *See Sokolow*, 490 U.S. at 7. "The presence or absence of reasonable suspicion must be determined in light of the totality of the circumstances confronting a police officer, including all information available to the officer at the time of the decision to stop a person." *United States v. Silva*, 957 F.2d 157, 160 (5th Cir. 1992) (citing *United States v. Cortez*, 449 U.S. 411, 417—18 (1981).

Where reasonable suspicion exists to detain an individual, police officers are required to use the least intrusive means to verify or dispel their suspicions within a short period of time. *See Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion). "The relevant inquiry is always one of reasonableness under the circumstances." *United States v. Sanders*, 994 F.2d 200 (5th Cir. 1993). As such, the Court must determine on a case-by-case basis whether an officer was unreasonable in failing to use less intrusive procedures to conduct his investigation safely. *Id.* (citing *United States v. Sharpe*, 470 U.S. 675, 687 (1985)). Where the facts giving rise to an officer's reasonable suspicion are disputed, however, the Court cannot make a determination of whether the suspicion was reasonable. *See Goodson*, 202 F.3d at 736.

### 1. Did Gregory have reasonable suspicion to detain Arriaga?

Gregory contends that he had reasonable suspicion to detain Arriaga based on Carter's report that Arriaga was involved in a verbal altercation with Garcia, which Carter believed had the potential to escalate to physical violence. Carter states:

> [Arriaga] . . . said something to [Garcia]. I saw [Garcia] stand up. I couldn't hear what was said but I could tell that the conversation wasn't friendly and that [Arriaga] and [Garcia] were arguing . . . . I saw [Arriaga] begin patting him down

like he was looking for weapons or something . . . . I told Agent Gregory that
there was fixing to be problems in the back.

(Carter Aff., Dkt. No. 61, Ex. 2.) Based on this report, Gregory and Rendon went to the back of

the club to investigate. Gregory states that he "observed two male subjects arguing with each

other and a Hispanic female standing between the two males trying to keep them separated.

These observations confirmed Carter's statements that there may be problems between these two

males." (Gregory Aff., *Id.*, Ex. 8.)

Gregory further states that once he approached Arriaga, he smelled alcohol on Arriaga's

breath and noted Arriaga's slurred speech and bloodshot eyes. (*Id.*) This led Gregory to suspect

that Arriaga was publicly intoxicated in violation of the Texas Penal Code, which states:

Public Intoxication. (a) A person commits an offense if the person appears in a
public place while intoxicated to the degree that the person may endanger the
person or another.

(a-1) For the purposes of this section, a premises licensed or permitted under the
Alcoholic Beverage Code is a public place.

TEX. PENAL CODE §§ 49.02(a)—(a-1). Thus, Gregory contends he had reasonable suspicion to

detain Arriaga to determine whether he was intoxicated in public and whether there was a

possibility that the argument he witnessed between Arriaga and Garcia could come to blows.

Arriaga admits that on the night in question, he "had a couple of Corona beers" and

"became involved in a verbal argument with another patron." (Arriaga Resp. to Interrog. No. 2,

Dkt. No. 61, Ex. 1; Pl.'s Fourth Am. Compl., Dkt. No. 58, ¶7.) In response to Gregory's Motion

for Summary Judgment, Arriaga does not deny that he was intoxicated, but he does deny that the

argument was escalating towards physical violence. According to Arriaga's sworn declaration:

I was in the bar with my brother when I noticed my ex-girlfriend in the
establishment. I soon realized she was at the bar with another male. I approached
my ex-girlfriend in order to speak with her. As I spoke to my ex-girlfriend the
male individual interrupted us and we became involved in a verbal argument that

lasted only a brief amount of time. I had no desire to start trouble so I walked away from this individual.

(Arriaga Decl., Dkt. No. 69, Ex. 1.)

Even accepting Arriaga's version of events as true—that his argument with Garcia had ended before Rendon and Gregory approached him and that he had no desire to physically fight with Garcia—Arriaga has presented no evidence to rebut Gregory's claim that he had reasonable suspicion to believe that Arriaga was intoxicated in public in violation of the Texas Penal Code. Furthermore, even if Arriaga did walk away from Garcia, this does not necessarily mean that Garcia was finished with Arriaga. Gregory had a duty as a licensed peace officer to use all lawful means to determine what was going on between the two men and to preserve the peace, including a duty to "interfere without warrant to prevent or suppress crime." *See* TEX. CODE CRIM. PROC. art. 2.13. The Court is of the opinion that Gregory had sufficient reasonable suspicion to seize and/or detain Arriaga pending such an investigation.

### 2.   Did Gregory use the least intrusive means in his investigation?

Even though Gregory had reasonable suspicion to seize and/or detain Arriaga in order to investigate whether Arriaga was intoxicated in public and whether the altercation between Arriaga and Garcia might escalate to violence, Gregory was still required to use the least intrusive means to verify or dispel his suspicions within a short period of time. *See Royer*, 460 U.S. at 500. In his sworn affidavit, Gregory explains his reason for directing Arriaga to step outside pending his investigation into this matter:

> Due to the loud music, potential interference by the public raising safety concerns along with not wanting to disrupt the Cactus Canyon's patrons and business, I believed it would be prudent to continue the investigation of this incident outside the bar. . . . I reasonably and in good faith believed that directing Arriaga to exit the bar for further investigation would be safer than to continue questioning Arriaga inside the Cactus Canyon.

(Gregory Aff., Dkt. No. 61, Ex. 8 at 2—3.)

Arriaga has failed to offer any argument or evidence to dispute Gregory's contention that he used the least intrusive means in his investigation. The Court is of the opinion that Gregory's actions in directing Arriaga to accompany him outside the club pending an investigation into Arriaga's possible intoxication and the altercation he witnessed between Arriaga and Garcia were reasonable and within his legal authority under Texas Code of Criminal Procedure article 2.13. Because Gregory had reasonable suspicion to detain Arriaga and acted reasonably under the circumstances, he is therefore entitled to summary judgment on Arriaga's unlawful seizure claim.

### B.  Unlawful Arrest

Arriaga further alleges that Gregory violated his Fourth Amendment rights when he "unreasonably" and "falsely" arrested him.  (Pl.'s Fourth Am. Compl., Dkt. No. 58, ¶ 27.) Arriaga contends that his arrest was unlawful because, "[o]n an objective basis, it is obvious that no reasonably competent officer would have concluded that merely being at the night club warranted the Plaintiff's arrest." (*Id.*, ¶ 28.)

It is undisputed that during the relevant period, the right to be free from unlawful arrest was clearly established. *See Johnston v. City of Houston*, 14 F.3d at 1059, 1061 (5th Cir. 1994). In suits alleging false arrest, the qualified immunity determination turns on whether "a reasonable officer could have believed [the] arrest to be lawful, in light of clearly established law and the information the arresting officers possessed." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). An arrest is unlawful if it is made without a proper arrest warrant or probable cause. *Johnston*, 14 F.3d at 1061; *see also Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994). In the

case at bar, it is undisputed that Gregory was acting without the benefit of a warrant. Thus, the Court's inquiry focuses on the existence of probable cause to support the arrest.

"Probable cause" consists of the "'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Piazza v. Mayne*, 217 F.3d 239, 245—46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). To determine whether a reasonably cautious person would have believed that a violation occurred, the Court must consider the expertise and experience of law enforcement officials. *Id.* (citing *United States v. Garcia*, 179 F.3d 265, 268 (5th Cir. 1999)). Additionally, probable cause does not require a showing that the defendant's belief that the plaintiff committed an offense was correct, or even more likely true than false. *Id.* (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)). Rather, the probable cause analysis requires only that the facts alleged provided the basis for the defendant to believe to a "'fair probability' that a violation occurred." *Id.* (citing *United States v. Antone*, 753 F.2d 1301, 1304 (5th Cir. 1985)).

Accordingly, the Court will first evaluate whether Gregory had probable cause to arrest Arriaga. If the Court finds the arrest was not supported by probable cause, then the Court must assess whether "a reasonably competent officer" in Gregory's position would have believed that he had probable cause. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Gregory is not entitled to qualified immunity for the arrest "where it is obvious that a reasonably competent officer would find no probable cause." *Babb*, 33 F.3d at 477 (citing *Malley*, 475 U.S. at 341). "On the other hand, 'if officers of reasonable competence could disagree on this issue, immunity should be recognized.'" *Id.* Indeed, the qualified immunity defense "gives ample room for mistaken

judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Id.*

As noted in Part I *supra*, Arriaga was arrested for and charged with public intoxication and resisting arrest. He ultimately pled guilty to the public intoxication charge, but the resisting arrest charge was dropped—according to Arriaga, due to inconsistencies in the evidence.[3] Gregory argues that, regardless of what crime or crimes Arriaga was ultimately convicted, he is entitled to qualified immunity on Arriaga's wrongful arrest claim because probable cause existed to arrest Arriaga for both public intoxication and resisting arrest, as well as assault. In order to survive summary judgment on his unlawful arrest claim, Arriaga must put forth evidence tending to show that a reasonably competent officer in Gregory's position would not have believed that he had probable cause to arrest Arriaga for any of these crimes.

### 1. Did Gregory have probable cause to arrest Arriaga for public intoxication?

Gregory contends that he had probable cause to believe Arriaga was publicly intoxicated in violation of Texas Penal Code §§ 49.02(a)—(a-1), the text of which is reproduced in full in Part IV.A.1 *supra*. In his TABC Incident Report, Gregory describes the basis for his reasonable belief that Arriaga was intoxicated in public on the night in question. "Upon making contact with Arriaga I detected a strong odor of an alcoholic beverage about his breath and person. I observed that Arriaga had an unsteady balance and slurred speech. It was obvious to me that Arriaga was intoxicated." (Dkt. No. 61, Ex. 7 at 1.) Rendon corroborates Gregory's description of Arriaga's condition. "During the interaction with Arriaga, I smelled a strong odor of alcoholic beverage on

---

3. The Court notes that Arriaga's wrongful arrest claim is not precluded even though he ultimately pled guilty to public intoxication. *Brown v. Sudduth*, 255 Fed. Appx. 803, 805 (5th Cir. 2007) ("[T]his court has explicitly rejected the argument that a guilty plea in a [ ] state court has any collateral estoppel or res judicata effect on subsequent § 1983 actions challenging the legality of an arrest.") (citing *Brown v. Edwards*, 721 F.2d 1442, 1447—48 (5th Cir. 1984) (holding that state criminal judgment did not bar section 1983 claim for wrongful arrest with respect to offenses to which defendant plead guilty or to offense that was dismissed)).

Arriaga's breath and person, red blood shot eyes, slurred speech and a swayed stance." (Rendon Aff., *Id*, Ex. 10 at 2.) Gregory's description of Arriaga's demeanor is further substantiated by Marshall, who affirms that Arriaga was "acting out of control" and "appeared to me he was intoxicated." (Marshall Resp. to Interrog. No. 9, *Id.*, Ex. 3).

Arriaga offers no evidence or argument indicating that he was not intoxicated on the night in question. Instead, he admits that he "had a couple of Corona beers." (Arriaga Resp. to Interrog. No. 2, *Id.*, Ex. 1.) Because Arriaga has failed to contradict Gregory's evidence that he appeared intoxicated in public on the night in question, the Court concludes that Gregory had probable cause to believe that Arriaga was in fact intoxicated. However, it is not enough for Arriaga to merely be intoxicated in public; Texas law also requires that an individual must be "intoxicated to the degree that the person may endanger the person or another." TEX. PENAL CODE § 49.02(a).

In his sworn affidavit, Gregory describes the basis for his reasonable belief that Arriaga was a danger to himself or others on the night in question:

> Arriaga's apparent alcohol intoxication along with his apparent imminent involvement in a bar fight led me to believe that he may be a danger to himself, to the Spanish male he had confronted or to the Spanish female that was attempting to keep the two separate immediately before our arrival.

(Gregory Aff., Dkt. No. 61, Ex. 8 at 2.) Rendon supports Gregory's claim. "Due to the circumstances reasonably indicating that Arriaga may have been attempting to start a fight together with Arriaga exhibiting numerous signs of public intoxication, I formed the belief that Arriaga may endanger himself or another person absent law enforcement intervention." (Rendon Aff., *Id.*, Ex. 10 at 2.) Marshall further supports Gregory's belief that Arriaga was a danger to himself or others:

> [W]hen I approached [Arriaga] and the male he was arguing with, I told them they needed to step outside. . . . [Arriaga] began cursing loudly at the TABC officers . . . . I was concerned enough at [Arriaga's] behavior that I place[d] my hand over my firearm to make sure he couldn't take it if he decided to try.

(Marshall Resp. to Interrog. No. 18, *Id.*, Ex. 3.)

Arriaga denies that he was attempting to start a fight with Garcia when he was approached by law enforcement, but instead claims he had already walked away from any quarrel. Even accepting Arriaga's statement as true that the altercation between Arriaga and Garcia "lasted only a brief amount of time" and that Arriaga "had no desire to start trouble" with Garcia (Arriaga Decl., Dkt. No. 69, Ex. 1), Arriaga has not brought forth evidence to contradict the evidence offered by Gregory supporting his belief that Arriaga may have been a danger to himself, to his ex-girlfriend Garza, to law enforcement, or to other patrons in the Cactus Canyon club that night. Thus, the Court concludes that Gregory had probable cause to believe that Arriaga was in fact intoxicated to the extent that he posed a danger to himself or others in violation of the Texas Penal Code.

### 2. Did Gregory have probable cause to arrest Arriaga for resisting arrest and/or assault?

Gregory contends that probable cause also existed to arrest Arriaga for resisting arrest and assault in violation of Texas law.[4] Gregory states that after he and Rendon advised Arriaga

---

4.   The Texas Penal Code provides:

> Resisting Arrest, Search, or Transportation. (a) A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another.

TEX. PENAL CODE § 38.03(a). The Texas Penal Code further provides:

> Assault. (a) A person commits an offense if the person . . . (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

13

that he needed to escort them outside the club, Arriaga initially cooperated but quickly began to resist. According to Gregory:

> [A]fter Arriaga's non-compliance with three commands, we attempted to mechanically and physically escort him out of the bar when I noticed that Arriaga was stiffening his arms and upper body resisting our efforts. Arriaga next shoved agent Rendon, took an aggressive fighting stance, clinched his fists and stepped toward us.

(Gregory Aff., Dkt. No. 61, Ex. 8.) Gregory's account of events is corroborated by numerous witnesses. (*See* Rendon Aff., *Id.*, Ex. 10 ("I . . . told [Arriaga] a fourth time that we needed to exit the bar. As agent Gregory and myself attempted to lead Arriaga to the exit, I noticed that his body had stiffened when he turned and shoved me away from him creating a gap between us."); Marshall Resp. to Interrog. Nos. 9 & 18, *Id.*, Ex. 3 (Arriaga "was acting out of control" and "continued to curse and act belligerent."); Cactus Canyon employee Jennifer Thompson Aff., *Id.* Ex. 11 (Arriaga was "being combative," "yelling at and struggling with the agents," and "br[oke] away from the agents."); Cactus Canyon general manager Kurt Brewer Aff., *Id.*, Ex. 12, Attach. 7 (Arriaga was "resisting and swearing at the agents, threatening them and . . . being combative."); Cactus Canyon employee Jeremy Roell Aff., Dkt. No. 69, Ex. 5 (Arriaga told Rendon, "'You take these cuffs off of me and I will kill you.'"))

Arriaga tells a different story:

> As I stood around in the bar with my brother, I was approached by Defendants Rendon, Gregory, and another unidentified law enforcement officer, who ordered me to accompany them outside. . . . At this point I was not sure what was happening, and I initially questioned their need for me to go outside. My questions obviously upset Defendants Rendon and Gregory and they again ordered me outside with no explanation. Since I was not looking for any trouble, I began to walk towards the front exit of the bar. As I approached the front exit I again attempted to ascertain why I was being asked to step outside by simply asking the same question to Defendants Rendon and Gregory.

---

TEX. PENAL CODE § 22.01(a)(3). As noted *supra*, Arriaga was initially charged with resisting arrest, but those charges were later dropped. He was never charged with assault.

(Arriaga Decl., Dkt. No. 69, Ex. 1.) Arriaga further states that he "offered no resistance" after being tackled to the ground by Rendon and placed in handcuffs. (*Id.*)

There is clearly a strong factual dispute concerning whether Arriaga resisted arrest or assaulted Rendon, and Arriaga's conduct is germane to his excessive force claim, specifically whether the force used against Arriaga was necessary to bring him under control. However, under existing Fifth Circuit precedent, "[i]f there was probable cause for any of the charges made . . . then the *arrest* was supported by probable cause, and the claim for false arrest fails." *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) (emphasis in original). Because the Court finds that Arriaga's arrest for public intoxication was supported by probable cause, the Court need not determine whether Gregory had probable cause to believe Arriaga had also resisted arrest and assaulted Rendon in violation of Texas law. Gregory is therefore entitled to summary judgment on Arriaga's wrongful arrest claim.

### C.  Excessive Force

Finally, Arriaga claims Gregory violated his Fourth Amended rights by using excessive force during his arrest because no reasonable law enforcement officer would have initiated "such a brutal and life threatening attack" on someone in Arriaga's position. (Pl.'s Fourth Am. Compl., Dkt. No. 58, ¶ 15.) According to Arriaga, the force Gregory used "was not performed in good faith to maintain or restore discipline, but was performed maliciously, intentionally, and sadistically for the very purpose of punishing and causing harm to Plaintiff." (*Id.*, ¶ 16.)

Like claims of wrongful arrest, the Supreme Court has held that "*all* claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigative stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original).

The Fifth Circuit has established a three-part test for consideration of a claim of excessive force under Section 1983. In order to prevail on such a claim, a plaintiff must show that he "(1) suffered some injury which (2) resulted from force that was clearly excessive to the need for force; (3) the excessiveness of which was objectively unreasonable." *Heitschmidt v. City of Houston*, 161 F.3d 834, 839 (5th Cir. 1998) (citing *Ikerd v. Blair*, 101 F.3d 430, 433—34 (5th Cir. 1996)).

When determining whether the amount of force used was reasonable, courts are mindful of the fact that police officers are often faced with difficult situations that demand split-second decisions. *Graham*, 490 U.S. at 397. Consequently, the Court will view the circumstances through the eyes of the officers at the scene and will not substitute its own hindsight in determining whether the defendant's acts were reasonable. *Id.* "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Id.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Thus, the force used against a plaintiff will be considered in context of the problem the defendant was facing when he used the force, *Ikerd*, 101 F.3d at 434, including "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Gutierrez v. City of San Antonio*, 139 F.3d 441, 447 (5th Cir. 1998) (quoting *Graham*, 490 U.S. at 396).

Forming the basis for his excessive force claim against Gregory, Arriaga alleges that after Rendon struck him in the leg with his asp and tackled him to the ground, Gregory assisted Rendon as they beat Arriaga with their asps:

> Plaintiff, now on the ground and completely defenseless, was repeatedly struck with asps by Defendant[s] Rendon and Gregory. Plaintiff offered no resistance and went into the fetal position in an attempt to shield his body from the numerous blows being rained down upon him. As Defendants Rendon and

> Gregory mercilessly beat Plaintiff, they screamed at him to get up off the ground .
> . . . Eventually, Defendants Rendon and Gregory discontinued their asp swinging
> campaign against Plaintiff and they each jumped on top of Plaintiff and placed
> him in handcuffs.

(Pl.'s Fourth Am. Compl., Dkt. No. 58, ¶ 9.)

Gregory maintains that he did not strike Arriaga any time, and that "[a]t most, [he] pushed Arriaga away with his baton and assisted Rendon in handcuffing him after Rendon had already gotten him to the ground." (Def.'s M. Summ. J., Dkt. No. 61 at 17.) The Cactus Canyon security video (*Id.*, Exs. 5 & 6); Gregory's incident report (*Id.*, Ex. 7), affidavit (*Id.*, Ex. 8), and deposition testimony (Dkt. No. 95, Ex. 2); and Arriaga's sworn declaration (Dkt. No. 69, Ex. 1), deposition testimony (Dkt. No. 96), and response to Gregory's Motion for Summary Judgment (Dkt. No. 69), all support Gregory's version of events. Significantly, Arriaga acknowledges that "it is clear from the video evidence that Plaintiff is attacked from behind by *Defendant Rendon* as Plaintiff walks towards the front door of the bar" (Dkt. No. 69 at 9) (emphasis added), and despite the allegations contained in his Complaint, Arriaga's interrogatory responses identify only Rendon—and not Gregory—as having struck him. (Dkt. No. 61, Ex. 1, ¶22.) While Arriaga argues in his response brief that "Gregory actually participated in applying force to place Plaintiff in hand restraints" (Dkt. No. 69 at 15), the injury that forms the basis of his excessive force claim is a broken leg, and Arriaga's sworn declaration admits that it was when "Rendon tackled [him] to the ground and struck [him] with his asp across [his] lower leg and ankle [that] caus[ed] [him] to feel immediate and agonizing pain." (Arriaga Decl., Dkt. No. 69, Ex. 1.) Finally—and most importantly—Arriaga concedes in his deposition testimony that Gregory "didn't physically hurt [him] or do anything like that" (Arriaga Dep., Dkt. No. 96 at 91:23—24.)

The undisputed evidence, including Arriaga's own admission, shows that Gregory did not strike Arriaga with his asp or directly injure his leg. Therefore, Gregory's liability—if any—

would necessarily fall under some type of bystander liability analysis. Arriaga asserts such a claim for the first time in response to Gregory's Motion for Summary Judgment:

> Defendant Rendon admits to striking Plaintiff and the video evidence clearly establishes that Defendant Rendon tackled Plaintiff to the ground with Defendant Gregory following closely behind and using force against Plaintiff. The question is whether it was reasonable to do so under the circumstances and whether Gregory should have protected Plaintiff from the unwarranted attack.

(Dkt. No. 69 at 13.) [5]

To prevail on a claim of third party liability under Section 1983, Arriaga must show that Gregory was present at the scene and did not take "reasonable measures to protect [Arriaga] from [Rendon]'s use of excessive force." *See Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). It is undisputed that Gregory was present at the scene when Arriaga was arrested and his leg was allegedly broken. However, the Court need not decide whether Rendon's use of force was excessive or whether Gregory took reasonable measures to prevent Rendon's use of force, because Arriaga conceded during his deposition testimony that there was nothing Gregory could have done—either before or after Rendon struck Arriaga with his asp and tackled him to the ground—to prevent Arriaga's injuries:

---

5.  The Court notes that Arriaga did not plead a failure-to-intervene claim against Gregory in his Fourth Amended Complaint (Dkt. No. 58), which is currently the live pleading in this case. Thus, Gregory contends, Arriaga has waived this claim. *See Cutrera v. Board of Sup'rs of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."). On November 10, 2009—nearly five months after Gregory moved for summary judgment and pointed out that Arriaga failed to plead such a claim—Arriaga moved to amend in order to cure this deficiency (Dkt. No. 100). If the Court were to allow Arriaga to amend his complaint, his Fourth Amended Complaint would no longer be the live pleading before the Court. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (an amended complaint supersedes a prior complaint and renders it of no legal effect unless the amended complaint specifically refers or adopts the earlier pleadings). Gregory's Motion for Summary judgment would therefore be moot, and Gregory would then be required to move for summary judgment a second time, likely pushing back the January trial setting yet another month or more. "'Because qualified immunity constitutes an '*immunity from suit* rather than a mere defense to liability,' the defense is intended to give government officials a right not merely to avoid standing trial, but also to avoid the burdens of . . . pretrial matters." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). Arriaga's Opposed Motion for Leave to File Plaintiff's Fifth Amended Complaint (Dkt. No. 100) is therefore DENIED; however, because the Parties have extensively briefed the issue, the Court will nonetheless address and dispose of Arriaga's failure-to-intervene allegations against Gregory.

> Q: [I]f this happened unexpectedly, you being struck, what could Gregory have done?
>
> A: I don't know. I guess nothing.

(Arriaga Dep. Dkt. No. 96 at 86:7—9.)

> Q: If we're not talking about preventing . . . you being hit with the baton is there anything Gregory could have done to help you other than what he did?
>
> A: I guess not.

(*Id.* at 88:5—8.)

> Q: I want to talk about Gregory's role.
>
> A: Okay. He didn't physically hurt me or anything like that.
>
> Q: And did he fail to do something that he should have done?
>
> A: No, sir.
>
> Q: So you don't fault Gregory?
>
> A: No, sir.

(*Id.* at 91:22—92:4.)[6]

Because Arriaga has conceded that he has no cause of action for excessive force against Gregory—either directly or on a theory of third party liability—the Court is of the opinion that Gregory is entitled to summary judgment on Arriaga's excessive force claim.

---

6. Nonetheless, in his Second Supplemental Response to Gregory's Motion for Summary Judgment (Dkt. No. 95), Arriaga attempts to use an excerpt from Gregory's deposition testimony to prove that Gregory "expected and desired" that Rendon would use force against Arriaga, and that he had ample opportunity to prevent Rendon's use of force. The Court finds no merit to this argument, as a full excerpt of Gregory's deposition testimony reveals the following:

> I didn't know that [Rendon] was going to strike [Arriaga] and I didn't know the exact moment he was going to strike him. And you asked me could I have prevented it. And knowing now, there's no way I knew the exact moment he was going to. And the only way that I could see that I could have prevented it was to stand in between them to prevent anything . . . I didn't know Arriaga was going to do anything . . . I didn't know that [Rendon] was going to strike [Arriaga] and didn't know the exact moment he was going to strike him.

(Gregory Dep., Dkt. No. 95, Ex. 12, 92:18—93:7.)

**IV. Conclusion**

For the aforementioned reasons, Gregory is entitled to qualified immunity on all of Arriaga's claims. Gregory's Motion for Summary Judgment on the Basis of Qualified Immunity (Dkt. No. 61) is therefore GRANTED.

It is so ORDERED.

SIGNED this 10th day of December, 2009.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE